**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| City of Glendale, a municipal corporation, ) | No. CV-12-380-PHX-BSB |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| National Union Fire Insurance Company ) of Pittsburgh, PA; Commerce and Industry ) Insurance Company; and Chartis ) Aerospace Adjustment Services, Inc., ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court on a motion to compel.[1] Plaintiff, the City of Glendale (City), asserts that the Defendants, National Union Fire Insurance Company of Pittsburgh (National Union), Commerce and Industry Insurance Company (Commerce and Industry), and Chartis Aerospace Adjustment Services, Inc. (Chartis), failed to produce responsive, relevant and non-privileged documents in response to discovery requests. (Doc. 63.) Defendants assert that they properly withheld the disputed documents on the basis of the attorney-client privilege and the work produce doctrine, as listed on their privilege log. (Doc. 65.) As set forth below, the Court denies the motion in part, and grants the motion in part.

---

[1] The parties have complied with the Case Management Order provisions regarding discovery disputes (Doc. 20), and with the meet and confer requirements of Federal Rule of Civil Procedure 37(a)(1). Therefore, the parties have properly brought this matter before the Court.

## I.     Background

In August 2009, the City submitted a claim to Defendants seeking insurance coverage for defense costs and indemnification in the Valley Aviation litigation.[2]  The City sought coverage under separate general liability policies that Defendants National Union and Commerce and Industry had issued and that Defendant Chartis administered (the Policies). (Doc. 25 ¶ 17.)  Chartis retained outside counsel, the Berger Kahn law firm, to conduct a coverage analysis.  Berger Kahn attorney Lance LaBelle prepared a coverage letter, dated September 29, 2009, and offered the opinion that Defendants did not have a duty to defend or indemnify the City under the Policies.  (Doc. 63, Ex. 1.)  On October 15, 2009, Defendants denied coverage for the Valley Aviation litigation.  (Doc. 25 ¶ 18, Ex. 6.)  In May 2011, the Valley Aviation litigation was tried to a jury and resulted in a verdict and judgment against the City for $2,275,642.32. (Doc. 47 ¶ 16.)

On August 15, 2011, the City sent Barry Campbell, the Chartis Assistant Vice President and Claims Manager who had handled their claim in 2009, "daily transcripts and [the] judgment" from the Valley Aviation litigation.  (Doc. 63, Ex. 4; Doc. 63-1 at 35.)  Campbell forwarded this information to LaBelle at Berger Kahn  (Doc. 63-1 at 35.)  Shortly thereafter, on August 26, 2011, Campbell received a letter from the City's attorney reasserting the City's coverage position and asking Defendants to reconsider their denial of coverage.  (Doc. 25 ¶ 19, Ex. 7; Doc. 67, Ex. 1.)  On August 29, 2011, Campbell forwarded that letter to LaBelle at Berger Kahn.  (Doc. 67, Ex. 1.)  On August 30, 2011, LaBelle advised Chartis that it should anticipate litigation on the coverage issue and recommended that Chartis retain Arizona counsel. (Doc. 63, Ex. 3.)  On August 31, 2011, Chartis transferred the claims file from Campbell to Betsy Fulton, a Senior Vice President with Chartis in Arizona, and retained Christian

---

[2] The background of this insurance coverage dispute is set forth more fully in the Court's Order on the parties' cross motions for summary judgment (Doc. 70), and the parties' briefing on those motions (Docs. 24, 25, 46, and 47), and is not repeated here.  The Court sets forth only the background information related to the motion to compel.

Henrichsen with CKGH Law, P.C. (CKGH) to conduct a coverage analysis.  (Doc. 63, Ex. 4; Doc. 63-1 at 24.)

On October 13, 2011, the City filed its complaint in this matter, asserting claims for declaratory judgment, breach of contract, and insurance bad faith arising from Defendants' denial of coverage.  (Doc. 1.)  Defendants' Arizona counsel, Henrichsen, prepared a coverage letter, dated October 24, 2011, and opined that the Valley Aviation litigation did not trigger a duty to defend or indemnify the City under the Policies. (Doc. 63, Ex. 2.)  On October 27, 2011, on Chartis's behalf, Henrichsen sent a letter to the City's attorney advising that CKGH had concluded that there was no coverage under the Policies and Chartis denied coverage for the City's claims related to the Valley Aviation litigation.  (Doc. 25 ¶ 25, Ex. 9.)

**II.     The City's Request for Production of Documents and Defendants' Privilege Log**

On August 13, 2012, the City served Defendants with a request for production of documents (RFP) for: (1) the entire file maintained by Berger Kahn relating to the Valley Aviation lawsuit including the Zevnik e-mail[3]; (2) the entire file maintained by CKGH relating to the Valley Aviation lawsuit; (3) all insurance coverage opinion letters issued during the last five years by Berger Kahn and CKGH to any of the Defendants and relating to the interpretation of the insurance policy language at issue in this case ("invasion of the right of private occupancy," "discrimination," and the definition of "person"); and (4) all insurance coverage opinion letters issued by these law firms during the past five years to any of the Defendants and relating to Arizona insurance policies and/or the interpretation of Arizona law. (Doc. 63, Ex. 5.)

Defendants objected to the production of these materials and asserted the  work product doctrine, attorney-client privilege, and relevance.  (Doc. 63, Exs. 6 and 7.)  In response to RFP Nos. 1 and 2, Defendants stated that they had produced all non-privileged correspondence, including e-mails, from Berger Kahn and CKGH related to their coverage opinions, but they objected on the basis of the work product doctrine and relevance to the production of the Zevnik

---

[3]  The Zevnik e-mail, dated August 30, 2011, was prepared by Berger Kahn attorney Richard Zevnik and sent to LaBelle. The City discovered the existence of this e-mail from the Berger Kahn invoices that Defendants provided in discovery.

e-mail in the Berger Kahn file, copies of cases and statutes, legal research memoranda, internal memoranda, e-mails concerning research, and communications in the CKGH file related to Plaintiff's pending complaint in this matter.  (Doc. 63, Ex.7.)  Defendants objected that RFP Nos. 3 and 4 were "overbroad as to time," and on the basis of attorney-client privilege, the work product doctrine, and relevance.  (*Id.*)

On September 27, 2012, Defendants served the City with a privilege log identifying the materials withheld from their response to the City's discovery.  (Doc. 63, Ex. 8.)  The privilege log lists ninety-three items, which are described as e-mails, file notes, and coverage opinions in other matters.[4]  (*Id.*)  The first fifteen items on the privilege log are e-mails and attorney notes from the Berger Kahn file, with various dates in August 2011.  (Bates-stamped CORR 88-127 and 152-161.)  Ten of these fifteen items are communications between Campbell and LaBelle (Bates-stamped CORR 88-94, 96-103, and 108-127), while the other five items in this category are internal Berger Kahn e-mails regarding status, internal directives, and attorney file notes.  (Bates-stamped CORR 95, 104-107, and 152-161.)  Items eighty-eight through ninety-three on the privilege log are coverage opinions from either Berger Kahn or CKGH provided to Chartis, with various dates between 2007 and 2012. (Bates-stamped COVOPS 1-85.)

The vast majority of items on the privilege log, seventy-two items, or items sixteen through eighty-seven, are from the CKGH file and consist of e-mails, draft letters, and file notes, and are all dated between August 2011 and February 2012.  (Bates-stamped CKGH 175, 189-190, 198-204, 206-210, 213, 220-221, 223, 235, 237-263, 266-268, 283-319, 337, 343-345, 353-354, 358-363, 371-373, 384, 401-402, 405-408, 414-415, 428-430, 449, 452-454, 466-467, 477-482, 485-502, 506-510, 589-590, 593-594, 607-608, 624, 627-628, 652-659, 701-711, and 721).  Twenty-three of these items are internal CKGH e-mails, e-mails to Fulton at Chartis, and e-mails

---

[4] The privilege log does not identify the listed documents by an item number, but instead identifies the documents by Bates-stamp number, date, author, recipient, and document description. For ease of reference, the Court has assigned sequential numbers to each item on the privilege log and identifies the documents as one through ninety-three. To avoid confusion in its discussion of the documents, the Court will also identify documents by Bates-stamp number.

to Attorney Terhar regarding the pending bad faith lawsuit (Bates-stamped CKGH 175, 199-204, 208-210, 213, 235, 268, 354, 371-373, 401-402, 408, 414-415, 428-430, 467, and 477-480); forty-one items in this category are internal e-mails or file notes regarding the status of the law firm's investigation and draft opinion letters for Chartis (Bates-stamped CKGH 189-190, 198, 206-207, 220-221, 223, 237-263, 266-267, 283-319, 337, 343-345, 353, 358-363, 384, 405-407, 449, 452-454, 465-466, 481-482, 485-487, 498-502, 506-510, and 657-659); and the remaining eight items in this category are copies of e-mails between Campbell and LaBelle, or e-mails and file notes from Campbell describing conversations and legal advice received from LaBelle, all with dates in August 2011.  (Bates-stamped CKGH 589-590, 593-594, 607-608, 624, 627-628, 652-656, 701-711, and 721.)

In the pending motion, the City seeks an order compelling Defendants to disclose all of the materials identified on the privilege log related to the insurance coverage analysis of Defendants' outside counsel, including documents that were communicated to Defendants and internal law firm documents that were not communicated to Defendants. (Doc. 63 at 6.)  The City's motion, however, does not specifically identify any of the documents on the privilege log it seeks, except the August 30, 2011 Zevnik e-mail (Bates-stamped CORR 154-161) and the coverage opinions identified in response to RFP Nos. 3 and 4 (Bates-stamped COVOPS 1-85).

**III.   Defendants' Assertions of the Attorney-Client Privilege and the Work Product Doctrine and the City's Assertions of Waiver**

Defendants acknowledge that by asserting an advice-of-counsel defense to the City's bad faith claims, they have waived the attorney-client privilege with respect to communications from their counsel providing advice on the insurance coverage issues that are in dispute in this matter. (Doc. 65 at 5 (citing *State Farm Mut. Auto. Ins. Co. v. Lee*, 13 P.3d 1169 (2000)).  Defendants assert that, pursuant to this limited waiver of the attorney-client privilege, they have produced all communications from "Berger Kahn in the claims file relating to that firm's 2009 coverage analysis" (Doc. 65 at 5), and they have produced the coverage advice they received from CKGH in 2011.  (*Id.* at 6.)

Defendants, however, have asserted that this waiver does not extend to their communications with Berger Kahn in August 2011 because they did not rely upon any coverage advice from that firm in 2011.  (*Id.* at 5-6.)  Defendants also argue that Berger Kahn's and CKGH's internal communications and analysis of the coverage issues in 2011 are protected by the work product doctrine, and that this protection is not waived by their limited waiver of the attorney-client privilege because (1) they did not rely upon Berger Kahn in denying coverage to the City in 2011 (*Id.* at 6, 10, and 12), and (2) Berger Kahn's and CKGH's internal work product was not communicated to Defendants and therefore they could not have relied upon it in making their coverage decisions.  (*Id.* at 7-8, and 12.)  Defendants also argue that they have not waived the attorney-client privilege for coverage opinions in other matters and that these opinions are not relevant in this case.  (*Id.* at 12-13.)

The City argues that by asserting the advice of counsel defense, Defendants have waived the attorney-client privilege as to any communications with their attorneys regarding their coverage analysis, including communications with Berger Kahn in 2011.  (Doc. 63 at 5-6.)  The City argues that this waiver of the attorney-client privilege extends to internal documents contained in the files of Defendants' outside counsel, Berger Kahn and CKGH, even if these documents were not communicated to Defendants.  (*Id.* at 6.) The City argues that these documents are relevant because Defendants may be liable in bad faith and for punitive damages based on the conduct of outside counsel.  (*Id.* at 6 )

The City also argues that the work product doctrine does not apply to the documents in outside counsels' files because these documents were prepared as part of Defendants' regular claims handling and were not created in anticipation of litigation.  (*Id.* at 7-9; Doc. 67 at 2-3.).  Alternatively, the City argues that even if the work product doctrine applies it has a "compelling need" for these documents for its bad faith claim, even if outside counsel's mental impressions and analysis were not communicated to Defendants, because these attorneys were Defendants' "agents" and the reasonableness of their analysis and conclusions are at issue.  (Doc. 63 at 8-10; Doc. 67 at 4-6.)  Finally, the City argues that by disclosing some documents related to coverage

1   advice from their attorneys, Defendants must produce all documents on the same subject,

2   pursuant to Federal Rule of Evidence 502. (Doc. 63 at 10-12; Doc. 67 at 6-11.)

3       The Court will address the potential application of the attorney-client privilege and the

4   work product doctrine, and the potential waiver of these protections, to each category of

5   documents listed on Defendants' privilege log.

6   **IV.   Advice-of-Counsel Defense and Waiver of the Attorney-Client Privilege**

7       In diversity jurisdiction cases such as this, state law governs the issue of attorney-client

8   privilege.  *See Roehrs v. Minnesota Life Ins. Co.*, 228 F.R.D. 642, 644-45 (D. Ariz. 2005).  In

9   Arizona, when a litigant "*relies* on and advances as a claim or defense a subjective and allegedly

10  reasonable evaluation of the law — but an evaluation that necessarily incorporates what the

11  litigant learned from its lawyer — the communication is discoverable and admissible."  *State*

12  *Farm Mut. Auto. Ins. Co. v. Lee,* 13 P.3d 1169, 1175 (Ariz. 2000) (emphasis in original).  In *Lee*,

13  the Arizona Supreme Court explained that the advice-of-counsel defense places the

14  communications between the party and its attorney at issue.  *Id.* at 1177.

15      The court explained that "[w]hen a litigant seeks to establish its mental state by asserting

16  that it acted after investigating the law and reaching a well-founded belief that the law permitted

17  the action it took, then the extent of its investigation and the basis for its subjective evaluation

18  are called into question."  *Id.*   Thus, "the *advice received from counsel* as part of the

19  investigation and evaluation" is relevant to "the court's truth-seeking functions."  *Id.* (emphasis

20  added.)  Therefore, the court explained that "[a] litigant cannot assert a defense based on the

21  contention that it acted reasonably because of what it did to educate itself about the law, when

22  its investigation of and knowledge about the law included *information it obtained from its lawyer*

23  and then use the privilege to preclude the other party from ascertaining what it *actually learned*

24  *and knew*."  *Id.* (emphasis added).

25      **A.     Communications Regarding Coverage Advice in this Case**

26      Defendants do not dispute that they waived the attorney-client privilege with respect to

27  their communications with Berger Kahn in 2009 and CKGH in 2011 regarding insurance

28  coverage opinions and advice.  Defendants argue, however, that this waiver does not extend to

their communications with Berger Kahn in 2011 because they did not rely upon any coverage advice they received from that firm at that time.  (Doc. 65 at 3-4, 6.)  Defendants argue that they would not be "in a position to use Berger Kahn's coverage advice as a 'sword and shield'[5] regarding the 2011 coverage position because Chartis will not rely upon anything Berger Kahn did during that time."  (*Id.* at 6.)

Defendants' argument misconstrues the scope of waiver of the attorney-client privilege that results from asserting the advice-of-counsel defense.  As the Arizona Supreme Court explained in *Lee*, when "an insurer makes factual representations which implicitly rely upon legal advice as justification for non-payment of claims, the insurer cannot shield itself from *disclosure of the complete advice of counsel* relevant to the handling of the claim." *Lee,* 13 P.3d at 1178 (emphasis added).  The court stated that the privilege is waived when "'the insurer directly relies on the advice of counsel *as a defense to the bad faith charge*.'"  *Id.* (quoting *Palmer v. Farmers Ins. Exch.*, 861 P.2d 895, 901 (Mont. 1993) (emphasis in original)).  The court did not state that the privilege is waived only as to the advice that the insurer accepts or relies upon.  Instead, the discussion in *Lee* focused on the advice that a party receives from counsel, not the advice it chooses to rely upon.  *See id.* at 1179.

Defendants' argument, if accepted, would allow an insurer to rely upon and use the advice that supports its coverage position, and at the same time assert that it did not rely upon contrary advice that it received and assert the attorney-client privilege to shield the latter advice from discovery.  Thus, as the court stated in *Lee*, a party cannot assert as a defense that it acted upon "a well-founded belief that the law permitted the action it took" and at the same time "use the privilege to preclude the other party from ascertaining what it actually learned and knew."  *Id*.

---

[5] In *Lee,* the Court described the advice-of-counsel defense and the scope of the resulting waiver of the attorney-client privilege with a "sword and shield metaphor."  13 P.3d at 1182. The Court explained that a litigant cannot "claim on the one hand that it acted reasonably because it made a legal evaluation from which it concluded that the law permitted it to act in a certain manner" and at the same time "withhold from its adversary and the factfinder information it received from counsel on that very subject and that therefore was included in its evaluation."  *Id.*

at 1177.  Therefore, the Court finds that Defendants have waived the attorney-client privilege for all communications they received from either Berger Kahn or CKGH regarding insurance coverage advice or opinions related to this matter, including communications from Berger Kahn regarding coverage advice in 2011 and copies or descriptions of those communications contained in the CKGH file.

Defendants must produce the ten items on the privilege log that are described as communications between Campbell and LaBelle in August 2011 (Bates-stamped CORR 88-94, 96-103, 108-127), and the eight items on the privilege log that are from the CKGH file and are described as copies of e-mails between Campbell and LaBelle, or copies of e-mails describing conversations between Campbell and LaBelle, or are notes describing that advice, all of which are dated in August 2011.  (Bates-stamped CKGH 589-590, 593-594, 607-608, 624, 627-628, 652-656, 701-711, and 721.)

## B.  Uncommunicated Coverage Analysis in Outside Counsel's files

The City argues that because Defendants asserted an advice of counsel defense, they have placed at issue whether their outside counsel acted reasonably and in good faith and therefore "the attorney client privilege cannot be used to deny access to any of the documents in the files of [D]efendants' attorneys."  (Doc. 63 at 6-7.)  The City relies upon the Arizona Court of Appeals' decision in *Mendoza v. McDonald's Corp.*, 213 P.3d 288, 302 (Ariz. Ct. App. 2009), to argue that when an insurer owes a duty of good faith to an insured, it cannot delegate that duty to another party, including an attorney.  (Doc. 63 at 6; Doc. 67 at 5-6.)  Based on *Mendoza*, the City argues that "Defendants are legally responsible for any misconduct of coverage counsel who is investigating the City's insurance claim even if the insurer/client is not aware of such conduct."  (Doc. 67 at 5.)  The *Mendoza* decision, however, does not support the City's argument that it is entitled to internal documents in the files of Defendants' outside counsel because Defendants asserted an advice-of-counsel defense.

In *Mendoza*, the plaintiff brought an action in superior court alleging  that McDonald's had breached its duty of good faith and fair dealing in handling her workers' compensation claim before the Industrial Commission of Arizona (ICA).  213 P.3d at 291.  At the time the plaintiff

filed her workers' compensation claim, McDonald's had an internal claims center to process workers' compensation claims, but during the pendency of the plaintiff's claim, McDonald's closed its processing center and retained a third-party administrator to process these claims. *Id*. at 305 n.28.  McDonald's also retained outside counsel to handle the plaintiff's workers' compensation claim in the ICA proceeding.  *Id*. at 292.  After a jury verdict in the plaintiff's favor, the plaintiff and McDonald's appealed and raised several issues related to jury instructions and evidentiary rulings.  *Id*. at 291.

In one portion of the decision, the court of appeals addressed the scope of the implied limited waiver of the attorney-client privilege arising from McDonald's assertion of a factual defense that incorporated the advice of its counsel.  *Id.* at 302.  The court held that outside counsel's advice that was *contained in the adjusters' notes in the claims file* was discoverable because the claims adjusters had received and reviewed counsel's advice about administering the claim and had incorporated that advice into their actions.  *Id*. at 300-04 (ordering production of the portions of the "adjusters' notes in the claim file" that the insured had redacted based on attorney-client privilege).  The court, however, noted that the superior court had rejected plaintiff's argument that she was entitled to McDonald's outside counsel's files from the workers' compensation case before the ICA and that she had not raised that argument on appeal. *Id.* at 304 n.25.  Therefore, the court explicitly limited its holding and directed that on remand plaintiff would *not* be entitled to McDonald's outside counsel's files from the workers' compensation case before the ICA.  *Id.*

In a separate portion of the decision, the court addressed plaintiff's argument that the instructions improperly limited the jury's consideration of McDonald's liability for punitive damage based on its attorneys' actions.  *Id*. at 305.  The court explained McDonald's respondeat superior liability for the actions of its agents, including McDonald's claims adjusters, the third-party administrator retained to process plaintiff's workers' compensation claim, and the outside counsel retained to handle the claim before the ICA.  *Id*. at 305.  After discussing Arizona agency law, the court found that the jury instruction was improper because an insurer may be

liable "for the actions of its attorney if those actions were taken in furtherance of the insurer's business and within the scope of the attorney's agency." *Id.*

In *Mendoza*, the plaintiff alleged that McDonald's bad faith in the handling of her workers' compensation claim caused her to suffer a pain disorder and psychological problems that were not a result of her industrial injury, but that were caused by the delays in authorizing needed treatments. *Id.* at 298-300, 307. McDonald's outside counsel was retained "to handle the ICA proceeding." *Id.* at 292. Thus, the actions of McDonald's outside counsel in handling plaintiff's workers' compensation claim were at issue in the plaintiff's subsequent bad faith action. In reversing the trial court on the jury instruction, the court of appeals did not make any reference to outside counsel's files; nor did the court provide any analysis that could be construed as allowing the discovery of outside counsel's files based on a party's assertion of the advice-of-counsel defense. *See id.* at 305.

Thus, the *Mendoza* decision does not support the City's argument that Defendants' waiver of the attorney-client privilege extends to documents in outside counsel's files that Defendants did not receive. The City has not cited any other cases to support its argument that it is entitled to documents in the files of Defendants' outside counsel based on Defendants' limited waiver of the attorney-client privilege. As explained in *Lee*, the advice-of-counsel defense places at issue the party's "subjective and allegedly reasonable evaluation of the law." 13 P.3d at 1175. Thus, the attorney-client privilege is waived for information a party receives from its counsel. *Id.* Therefore, the Court finds that the Defendants' assertion of the advice-of-counsel defense does not entitle the City to discovery of documents in Berger Kahn's or CKGH's files that have not been communicated to Defendants.

### C.    The Zevnik E-Mail

On August 30, 2011, Berger Kahn attorney Richard Zevnik prepared an e-mail to LaBelle and Defendants have asserted that this e-mail is work product that is not subject to discovery. (Doc. 63 Ex. 8, Bates-stamped CORR 154-61). Defendants assert that they did not receive or rely upon this e-mail. (Doc. 65 at 12.) The City does not argue that Berger Kahn sent this e-mail to Defendants, or that Defendants received or reviewed this e-mail. Instead, the City argues that

1   the content of the Zevnik e-mail was the source of the coverage advice that LaBelle provided to

2   Campbell on August 30, 2011.  (Doc. 63 at 4; Doc. 67 at 9.)  Therefore, the City argues that "this

3   e-mail is critical evidence of coverage counsel's opinions concerning the coverage issues and

4   what information should have been conveyed to [D]efendants in August of 2011."  (Doc. 63 at

5   4.)

6        To support this argument, the City refers to an August 30, 2011 entry on a Berger Kahn

7   invoice from Zevnik for 2.1 hours for preparing an e-mail to LaBelle "outlining analysis of

8   City's coverage position."  (Doc. 63 at 3-4, Ex. 4.)  The invoice indicates that, on the same day,

9   LaBelle spoke to Campbell for .5 hours about the "letter from [the] City's coverage counsel,

10  response, and advice for further handling."  (*Id.*; Doc. 63-1 at 40.)  Based on these billing entries,

11  the City posits that LaBelle read the Zevnik e-mail and communicated information from the

12  Zevnik e-mail to Campbell during their discussion about "advice for further handling."  (Doc.

13  63 at 4.)

14       The City's argument, however, is speculative and does not support a finding that the

15  Zevnik e-mail was disclosed to Defendants.  Even if the Court concluded that LaBelle reviewed

16  the e-mail before his discussion with Campbell, and that he may have considered that e-mail

17  while forming his own mental impressions, that would not support the conclusion that LaBelle

18  agreed with any analysis that may have been contained in the Zevnik e-mail and then conveyed

19  it to Campbell during their discussion.  The best evidence of the advice that LaBelle conveyed

20  to Campbell during the August 30, 2011 discussion is the e-mail that Campbell prepared on that

21  date summarizing the discussion   (Doc. 63, Ex. 3) and Campbell's testimony about the

22  discussion.  (Doc. 47, Ex. 7 at 252.)  Defendants have produced a copy of Campbell's August

23  30, 2011 e-mail and the City has deposed Campbell.  Therefore, the Court finds considers the

24  Zevnik e-mail an internal Berger Kahn document that was not communicated to Defendants.

25       The Court also rejects the City's contention that this e-mail must be produced because it

26  is "critical evidence" and that Zevnik could be a "key witness in support of plaintiff's bad faith

27  claim."  (Doc. 63 at 4; Doc. 67 at 10.)  The City's argument that the Zevnik e-mail and attorney

28  Zevnik's potential testimony are relevant to its bad faith claim appears to be a reiteration of its

argument that Defendants are liable for the conduct of their outside counsel as their agents. (*See* Doc. 63 at 4; Doc. 67 at 10.) As set forth above, the City attempts to support this argument by citing *Mendoza,* which does not support the argument that the advice-of-counsel defense places outside counsel's internal, uncommunicated analysis at issue. Instead, as set forth in *Lee*, this defense places at issue a *party's* "subjective and allegedly reasonable evaluation of the law." *Lee*, 13 P.3d at 1175. The advice-of-counsel defense does not place at issue uncommunicated information from outside counsel. Therefore, the Court concludes that the assertion of the advice-of counsel defense does not require Defendants to produce the Zevnik e-mail. (Bates-stamped CORR 154-61.)

### D. Coverage Advice in Other Matters

The City also argues that the coverage opinions that Defendants received from Berger Kahn and CKGH in other matters, but that "deal with the coverage issues involved in this case" are "part of the 'foundation' for [D]efendants' reliance on advice of counsel." (Doc. 63 at 7 (quoting *Mendoza*, 213 P.3d at 302)). In *Mendoza*, the court applied *Lee,* and explained that "in a bad faith context, when an insurer raises a defense based on factual assertions that, either explicitly or implicitly, incorporates the advice or judgment of its counsel, it cannot deny an opposing party the opportunity to discover the foundation for those assertions in order to contest them." 213 P.3d 302. Thus, the City argues that coverage opinions on the same issues in other matters could be "potentially powerful impeachment evidence" if the advice Defendants received in other cases was inconsistent with the advice it received in this case and, therefore, the coverage opinions that it requested in RFP Nos. 3 and 4 are not privileged and are relevant. (Doc. 63 at 7.)

Defendants argue that the advice it received in other matters is irrelevant and that there is no basis for a wavier of the attorney-client privilege in other cases. (Doc. 65 at 12-13.) Defendants also assert that the City does not cite any case from a federal or state court ordering an insured to produce coverage opinions from other matters. (*Id.* at 12.) Although Defendants are correct that the City has not cited such cases, courts do "permit discovery regarding other lawsuits and claims involving the identical policy provisions." *Phillips v. Clark County School*

*Dist.*, 2012 WL 135705, \*6 (D. Nev. Jan. 18, 2012) (collecting cases)*; see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 106-97 (D.N.J. 1991) (compelling insurer to produce limited number of underwriting files pertaining to claims of other insureds based on identical policy language).

Here, the coverage opinions that Defendants received from CKGH or Berger Kahn in other matters involving the same policy language as in this case may be relevant to demonstrate that Defendants have received inconsistent coverage advice or have acted inconsistently in response to coverage advice.  Therefore, the coverage advice that Defendants have received in other matters related to the same policy language at issue in this case may be relevant to the City's bad faith claim.  In addition, the coverage advice that Defendants previously received on the same policy language is part of what Defendants "knew about the law" and "learned from [their] lawyers" and, thus, the Court finds that Defendants have waived the attorney-client privilege with respect to these opinions by asserting the advice-of-counsel defense.  *See Lee*, 13 P.3d at 1174.

Defendants must produce the coverage opinions that they received from Berger Kahn and CKGH that address the policy provisions at issue in this case ("invasion of the right of private occupancy," "discrimination," and the definition of "person"), or that address the interpretation of Arizona law related to the policy provisions at issue in this case, including any coverage opinions that address how Arizona courts interpret insurance contracts, or apply the *ejusdem generis* doctrine.  Defendants, however, are not required to produce any coverage opinions from other matters that it received after issuing its coverage decisions in this case.  Thus, Defendants are not required to produce the coverage opinion on the privilege log dated July 5, 2012 .  (Bates-stamped COVOPS 36-47.)  If any of the other five coverage opinions identified on the privilege log (Bates-stamped COVOPS 1-35 and 48-85) provide advice that is relevant to this matter, as set forth in this Order, Defendants must produce those opinions.  Defendants may significantly

redact these opinions to remove identifying information, facts that are not necessary for an understanding of the legal discussion, or any coverage advice that is not relevant in this case.[6]

### E.   Communications Regarding the Pending Bad Faith Suit

Defendants' limited waiver of the attorney-client privilege resulting from their reliance on the advice-of-counsel defense does not extend to their communications with their counsel that are not related to their insurance coverage analysis and advice.  *See Lee,* 13 P.3d at 1182 n.8 ("This, of course, does not mean the privilege was waived as to communications between [the insurer] and its counsel on other subjects . . .  Plaintiffs are not entitled to a fishing expedition through all of counsel's communications  . . . ."); *see also Mendoza*, 213 P.3d at 304 n.26 (the waiver of the attorney-client privilege for attorney advice that claims adjusters recorded in the claims file did not extend to entries in the claims file regarding the pending bad faith litigation).

Indeed, the City has not identified any specific documents that it seeks from the privilege log that are related to matters other than coverage advice.  Therefore, it appears that the City is not arguing that it is entitled to communications between Defendants and their attorneys, or other documents, that are not related to coverage advice.  Even if the City intended to argue that Defendants' waiver of the attorney-client privilege extends to such communications and documents, the Court finds that Defendants did not waive any privileges over such documents.

Therefore, Defendants are not required to produce the twenty-three items on the privilege log that are described as internal CKGH e-mails, e-mails to Fulton at Chartis, and e-mails to Attorney Terhar regarding the pending bad faith lawsuit.  (Bates-stamped CKGH 175, 199-204, 208-210, 213, 235, 268, 354, 371-373, 401-402, 408, 414-415, 428-430, 467, and 477-480.)

---

[6]  In their Reply, the City also argues that under Rule 502 Defendants have waived the attorney-client privilege for coverage opinions that involve the same subject matter as the opinion letters that Defendants disclosed in this case.  (Doc. 67 at 10-11.)  Because the Court has concluded that some of the coverage opinions in other matters may be relevant and discoverable based on  Defendants' reliance on the advice-of-counsel defense, it does not reach the City's Rule 502 waiver argument.

**V.      The Application of the Work Product Doctrine to Outside Counsel's files**

Defendants have objected on the basis of the work product doctrine to the production of documents from Berger Kahn's and CKGH's internal law firm files.  The City argues that Defendants have not properly supported their assertions of the work product doctrine for these documents.  The City also argues that the work product doctrine does not apply to these documents because they were not created in anticipation of litigation.  Finally, the City argues that even if these documents were prepared in anticipation of litigation, it has a compelling need for this "opinion" work product because the mental impressions of Defendants' outside counsel are at issue in the bad faith claim.

**A.      The Sufficiency of Defendants' Assertions of the Work Product Doctrine**

The City argues that under Rule 26(b)(5)(A), Defendants must demonstrate that each document on their privilege log is privileged or protected by the work product doctrine; the City contends that Defendants' "blanket" assertions that the withheld documents were prepared in anticipation of litigation are insufficient.  (Doc. 67 at 1-2.)  Thus, it appears that the City may be arguing that Defendants' privilege log is insufficient.  The Court finds that the privilege log is sufficient to meet Defendants' initial burden of demonstrating the applicability of the work product doctrine and the attorney-client privilege because it "identifies the specific communications and the grounds supporting the privilege as to each piece of evidence over which the privilege is asserted."  *See United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002).

The City also argues that Defendants were required to provide an affidavit or "other probative evidence" to establish that each document on their privilege log was prepared in anticipation in litigation.  (Doc. 67 at 2.)  The City relies upon *Henderson v. Metro. Prop. and Cas. Ins. Co.*, 2010 WL 5394912 (W.D. Wash. Dec. 22, 2010), to argue that because Defendants have not provided affidavits from their coverage counsel, there is no evidence that the documents at issue were prepared in anticipation of litigation.  (*Id.* at 2-3.)  That case did not address work product contained in outside counsel's files, but instead addressed the insurer's attempt "to establish that portions of a claim file can be work product."  *Henderson*, 2010 WL 5394912 at

*2. The court found that the insurer had "offered no evidence of any kind" to show the redacted and withheld documents were prepared in anticipation of litigation. *Id.*

In this case, however, Defendants have not made "blanket" and unsupported assertions that the documents at issue were prepared in anticipation of litigation. Defendants rely upon the timing of the creation of the documents, the nature of the work performed by outside counsel in creating these documents, and the status of the relationship between Defendants and the City at the time the documents were created as evidenced by the August 26, 2011 correspondence from the City's attorney to Chartis and by the August 30, 2011 e-mail from Campbell memorializing counsel's advice to anticipate litigation. (Doc. 65 at 3-4; Doc. 63, Ex. 3; Doc. 25, Ex. 7.) Therefore, the Court finds that Defendants have met the procedural requirements to preserve and present their objections based on the work product doctrine.

### B.     Anticipation of Litigation

Because the work product doctrine is a limitation on discovery, and not an evidentiary privilege, federal law governs its application. *See First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 163 F.R.D. 574, 577 (N.D. Cal. 1995); *see also See United States v. Nobles*, 422 U.S. 225, 238 (1975); *Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir. 1990) (en banc) (the work product doctrine is "broader than and distinct from the attorney-client privilege"). The federal rules provide that documents prepared in "anticipation of litigation or for trial" are protected as attorney work product. Fed. R. Civ. P. 26(b)(3)(A). This protection applies to documents prepared "by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *Id*.

The City argues that the documents in the Berger Kahn and CKGH files were not prepared in anticipation of litigation, but instead were part of routine claims handling and therefore are not protected work product. (Doc. 63 at 7-9; Doc. 67 at 3.) To support this argument the City cites *Lewis v. Wells Fargo*, 266 F.R.D. 433 (N.D. Cal. 2010), and *Marceau v. IBEW Local 1269*, 246 F.R.D. 610 (D. Ariz. 2007). These cases, however, do not address documents prepared by an insurer's outside counsel and whether such documents were prepared in anticipation of litigation. In *Lewis*, the court found that audit documents that non-attorney

employees prepared in the regular course of business, for an audit under the Fair Labor Standards Act, and nearly a year before any litigation commenced, were not work product. 266 F.R.D. at 440. Similarly, *Marceau* involved company audit documents prepared over a year prior to litigation. Management prepared the documents to "to address ongoing management issues." 246 F.R.D. at 614. The court concluded that the documents were not work product. Unlike *Lewis* and *Marceau*, the documents at issue here were prepared by outside counsel, not company employees, and were prepared shortly before and after the litigation commenced. *See Marceau,* 246 F.R.D. 614 ("the fact that litigation was not imminent tends to support the argument that the Report was not prepared in anticipation of litigation"). The Court finds that these cases do not support the City's argument that the Berger Kahn and CKGH documents at issue in this matter were not prepared in anticipation of litigation.

Documents prepared in the ordinary course of business are not protected by the work product doctrine because they would have been created regardless of the litigation. *Parrick v. FedEx Grounds Package Sys.*, 2010 WL 2854314, *10 (D. Mont. Jul. 19, 2010) (because FedEx is self-insured, documents it created regarding an accident were created in the ordinary course of business). Materials prepared as part of insurance claims investigations are generally not considered work product due to the industry's need to investigate claims. *Moe v. Sys. Transp., Inc.*, 270 F.R.D. 613, 624 (D. Mont. 2010). "Such materials are part of the ordinary course of business unless there is a sufficiently concrete connection between the investigation and potential litigation." *Id.* at 624-25 (citing *Bronsink v. Allied Prop. and Cas. Ins.*, 2010 WL 786016, *2 (W.D. Wash. Mar. 4, 2010)).

In an insurance claim dispute, an insurer's activity may "develop into activity undertaken in anticipation of litigation where a sufficient degree of adversity arises between the insurer and the insured." *Moe*, 270 F.RD. at 625. To determine when "an insurer's activity shifts from the ordinary course of business to anticipation of litigation, a court must determine 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Id.* (quoting *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 292 n.1 (D. Mont. 1998)).

This "because of" standard applies when a document could be characterized as having been prepared for multiple purposes, such as for purposes of conducting the ordinary course of business, or because of the prospect of litigation. *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004) (adopting the "'because of' standard articulated in the Wright & Miller Practice treatise") (citing Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 *Federal Practice & Procedure* § 2024 (2d ed. 1994)). Furthermore, the "because of" standard does not consider whether litigation was a primary or secondary motive for creating a document, but instead protects a document as work product when it was created because of litigation. *Id.* at 908. Under the "because of" standard, "'the nature of the document and the factual situation of the particular case' are key to a determination of whether work product protection applies." *Id.* (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 *Federal Practice & Procedure* § 2024 (2d ed. 1994)).

This dual purpose situation arises during insurance claims investigations. Accordingly, the insurer must identify a critical factor that made it anticipate litigation, and must demonstrate "'that the critical factor did indeed make the insurer deal with the insured in a different way.'" *Moe*, 270 F.R.D. at 625 (quoting *Stout v. Illinois Farmers Ins. Co.*, 852 F. Supp. 704, 707 (S.D. Ind.1994)). In *Moe*, the court suggested that an insurer's formal denial of a claim is a factor that supports a finding that the insurer's actions were in anticipation of litigation. 270 F.R.D. at 265; *see also Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*, 692 F. Supp. 2d 1194, 1200 (N.D. Cal. 2010) (defendant could assert work product protection for documents created on or after the date on which plaintiff sent a letter demanding coverage); *Equal Emp't Opportunity Comm'n v. Int'l Profit Assoc., Inc.*, 206 F.R.D. 215, 220–21 (N.D. Ill. 2002) (work product protection generally extends to protect documents generated after the litigation is already filed).

The City cites *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 197 F.R.D. 620 (N.D. Iowa 2000) to argue that an insurer's investigation to determine coverage is part of the routine business of an insurance company and is not in anticipation of litigation. (Doc. 63 at 7.) That case, however, does not establish that all documents generated as part of the investigation of a

claim are in the ordinary course of business and discoverable.  Instead, the court set forth a lengthy and detailed discussion of cases from multiple jurisdictions addressing the "difficulty of determining the scope of the work product privilege as it applies to insurance claims files or records from an insurance investigation of an insured's claim."  *Id.* at 630-36 (summarizing cases).

In *St. Paul*, the insurer had retained an outside company, Professional Claim Managers, to conduct the claims investigation.  *Id.* at 626.  The company president, who was an attorney, acted as the insurer's claims investigator or adjustor.  *Id.*  The court's decision turned on when the insured's investigation changed from "one in the ordinary course of an insured's business" to "one in anticipation of litigation."  *Id.* at 637.  To determine when this "shift" occurred, the court considered various factors cited by other courts, including whether the investigating party had determined a course of action, whether the parties had "staked out" their positions, and if so, whether they continued to explore amicable resolution.  *Id.* at 638 (citations omitted).  Ultimately, the discussion in *St. Paul* is consistent with the discussion in other cases that whether documents were created in anticipation of litigation requires a "case-by-case analysis."  *Id.* at 632 (quoting *Mission Nat'l Ins. Co. v. Lilly*, 112 F.R.D. 160, 165 (D. Minn. 1986)).

In this case, Defendants originally denied the City's request for insurance coverage for the Valley Aviation litigation on October 15, 2009.  (Doc. 25 ¶ 18, Ex. 6.)  After this denial, the City did not communicate with Defendants about the Valley Aviation litigation or its request for insurance coverage for nearly two years.  Then on August 15, 2011, the City sent Chartis daily trial transcripts and the judgment from the Valley Aviation litigation.  (Doc. 63, Ex. 4 at CHAR002650.)  Thus, Defendants learned that the Valley Aviation litigation had resulted in a $2,275,642.32 judgment against the City.  Campbell immediately forwarded this information to LaBelle at Berger Kahn. (*Id.*)

Approximately ten days later, on August 26, 2011, the City's coverage counsel sent Chartis a letter arguing that "the City believes the denial of coverage set forth in your letter ("the Denial Letter") dated October 15, 2009 was improper."  (Doc. 25 ¶ 19, Ex. 7 at CHAR001068.)  The City re-urged its coverage position, disagreed with arguments that Chartis had made in "an

effort to evade coverage," asserted that Chartis "ignored" the law, that its position would be rejected by Arizona courts, that it "incorrectly denied coverage," and that it "wrongfully denied coverage for [the Valley Aviation Litigation] in October of 2009." (*Id*. at CHAR001069-72.) The City asked Chartis to advise whether it would defend the City and indemnify it for the judgment and included a request for "reimbursement for all of its attorneys' fees and costs incurred in connection with the defense of the lawsuit." (*Id*. at CHAR001072.) The City stated that "[i]f Chartis persists in its denial of coverage, the City expects Chartis to provide a detailed explanation of its decision in response to the arguments and legal authorities cited herein" and directed Chartis to direct any communications to the City's attorneys. (*Id.*) On August 29, 2011, Chartis forwarded this letter to LaBelle for review. (Doc. 67, Ex. 1.)

On August 30, 2011, LaBelle advised Chartis that it should anticipate litigation on the coverage issue and recommended that Chartis retain Arizona counsel. (Doc. 63, Ex. 3.) On August 31, 2011, Chartis transferred the claims file to Fulton in Arizona and retained CKGH, an Arizona law firm. (Doc. 63, Ex. 4; Doc. 63-1 at 24.) On October 13, 2011, the City filed its complaint in this matter. (Doc. 1.) Approximately two weeks later, Defendants again denied coverage for the Valley Aviation litigation. (Doc. 25 ¶ 25, Ex. 9.)

Defendants argue that the timing of these events — the prior denial of coverage in 2009, the City's two years of silence during the Valley Aviation litigation, the significant judgment entered against the City, and the August 26, 2011 letter from the City's coverage counsel — establish that they anticipated litigation in August 2011 when the City contacted them again. (Doc. 65 at 2-3.) Defendants argue that LaBelle's August 30, 3011 discussion with Campbell in which he advised Chartis to anticipate litigation and retain Arizona counsel, after which Chartis immediately transferred the file to Arizona and retained Arizona counsel, also establish that they were acting in anticipation of litigation. *(Id.)* Finally, Defendants argue that the timing of the City's complaint, which was filed within two months of the City's first renewed contact with Chartis in August 2011 and before Chartis again denied coverage, also supports the conclusion that they "anticipated litigation, and rightly so." (*Id.* at 63.) The Court agrees with Defendants.

The City argues that the documents in the Berger Kahn file that were created in August 2011, particularly the Zevnik e-mail, were "prepared as part of counsel's regular practice of assisting [D]efendants in connection with their handling of insurance claims." (Doc. 63 at 9.) The City quotes a portion of Campbell's deposition testimony in which he states that "we would have done whatever research of whatever review that was needed" after receiving the City's August 26, 2011 letter. (Doc. 63 at 3 (quoting Doc. 47, Ex. 7 at 252.)) The City argues that this testimony "indicates that Mr. Zevnik's analysis would have been part of [D]efendants' normal business practice in response to an insured's request for reconsideration of a denial of coverage." (*Id*. at 9.)

The Court finds that Campbell's quoted deposition testimony that Defendants or their outside counsel would have "done whatever research or whatever review was needed" does not address whether that research and review would be to investigate an insurance claim, or in anticipation of litigation, or both. Even if the Court were to conclude that this testimony established that Defendants were investigating an insurance claim, that would not establish that the Zevnik e-mail and other documents in the Berger Kahn file were prepared in the ordinary course of business and not in anticipation of litigation. Instead, given the facts surrounding the City's request for reconsideration of insurance coverage, reading the Campbell deposition testimony in the manner that the City urges would only establish that Chartis and Berger Kahn were acting for the "dual purpose" of investigating a claim and in anticipation of litigation.

Although Defendants may have contacted outside counsel in August 2011 in part to review an insurance claim, the facts surrounding the City's renewed request for coverage, the $2,275,642.32 judgment against the City, and the degree of adversity between the parties establish that Defendants were also acting in anticipation of litigation. *See Stout*, 852 F. Supp. at 707. Therefore, even if Defendants were acting with a dual purpose, there were critical factors in August 2011 that made Defendants act differently toward the City and the documents in the Berger Kahn and CKGH files, dated after August 15, 2011, were created "because of" anticipated litigation and are work product. *See In re Grand Jury Subpoena*, 357 F.3d at 907.

**C.      Compelling Need for "Opinion" Work Product in a Bad Faith Case**

Even if work product protection applies, the City argues that it should be granted access to the files of Berger Kahn and CKGH because it has a "compelling" need for this "opinion" work product because it asserts that the mental impressions of Defendants' outside counsel are at issue in its bad faith claim.  (Doc. 63 at 8-9; Doc. 67 at 4.)  Thus, the City recognizes that Rule 26(b)(3) distinguishes between "ordinary" work product and "opinion" work product.  *See Moe,* 270 F.R.D. at 626-27; Fed. R. Civ. P. 26(b)(3).

"Ordinary" work product includes "raw factual information," *St. Paul,* 197 F.R.D. at 628, and can be discovered if a "party shows that it has substantial need for the material to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P 26(b)(3)(A)(ii).  "Opinion" work product includes "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  *Id.* at 26(b)(3)(B).  "A party seeking opinion work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product."  *Holmgren v. State Farm Mut. Auto. Ins. Co.,*  976 F.2d 573, 577 (9th Cir. 1992); *see also St. Paul*, 197 F.R.D. at 628 ("opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct of fraud" ) (quoting *Baker v. Gen. Motors Corp*., 209 F.3d 1051, 1054 (8th Cir. 2000)).

The City argues that it may discover work product in the files of Defendants' outside counsel because "[d]iscovery of opinion work product is permitted in insurance 'bad faith' cases because the mental impressions of the insurer's representatives in handling the claim and making coverage decisions are directly at issue and the insured's need for the materials is compelling." (Doc. 63 at 8.)  The City argues that its bad faith claim depends upon whether its underlying claim was "properly investigated and whether the results of that investigation were reasonably reviewed and evaluated."  (*Id.* at 9 (quoting *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 703, 712 (Ariz. Ct. App. 1985), *aff'd in part and rev'd in part*, 723 P.2d 675 (Ariz. 1986)).  Thus, the City argues that its bad faith claim places at issue "how thoroughly the coverage issues were

1   considered by outside counsel" and whether "outside attorneys knew (or recklessly disregarded)

2   Arizona law." (Doc. 63 at 9.)  Therefore, the City argues that it has a compelling need for

3   documents from outside counsel's files regarding their "internal coverage evaluations." (*Id.*)

4        The City's argument is not supported by the *Linthicum* decision. In that case, the court

5   explained that to establish bad faith "a plaintiff must show the absence of a reasonable basis for

6   denying the benefits of the policy and the defendant's knowledge or reckless disregard of a

7   reasonable basis for denying the claim." *Linthicum*, 723 P.2d at 711 (quoting *Anderson v.*

8   *Continental Ins. Co.*, 271 N.W.2d 368, 376-77 (Wis. 1978)). The court further explained that

9   "bad faith arises when an insurance company intentionally denies or fails to process or pay a

10  claim without a reasonable basis for such action." *Id.* "In applying this standard, however, it

11  is necessary to determine whether a claim was properly investigated and whether the results of

12  that investigation were reasonably reviewed and evaluated." *Id.* (citing *Anderson*, 271 N.W.2d

13  at 377).

14       The City argues that this language in the *Linthicum* decisions means that investigations

15  and analysis of outside counsel, which are not communicated to an insurer, are at issue in a bad

16  faith case. In *Linthicum*, however, the court addressed the insurer's investigation and the

17  information that the insurer reviewed and evaluated in making its coverage decision. *Id*. at 712-

18  13 (discussing the details of the insurer's investigation). Investigations and analysis of outside

19  counsel were not at issue or discussed in that case. The *Linthicum* decision does not state that

20  the reasonableness of an insurer's claims investigation or coverage analysis is determined by the

21  reasonableness of outside counsel's analysis that is not communicated to the insurer. Instead,

22  the court in *Linthicum* stated that it is "the defendant's knowledge" that is at issue. *Id.* at 711.

23  Information that is not communicated to an insurer is not within the insurer's knowledge and is

24  not relevant to determine the reasonableness of an insurer's actions.

25       As the Federal Circuit explained in the analogous circumstances of patent infringement

26  cases in which the defendants assert an advice-of counsel defense, the "[w]ork-product waiver

27  extends only so far as to inform the court of the *infringer's* state of mind." *In re EchoStar*, 448

28  F.3d 1294, 1303 (Fed. Cir. 2006) (emphasis in original). "It is what the alleged infringer knew

or believed, and by contradistinction not what other items counsel may have prepared but did not communicate to the client, that informs the court of an infringer's willfulness." *Id.* In *EchoStar*, the court explained that when an accused infringer asserts an advice-of-counsel defense and waives the attorney-client privilege, "communicative documents, such as opinion letters, become evidence of a non-privileged, relevant fact, namely what was communicated to the client*." Id. (citing United States v. Nobles*, 422 U.S. 225, 239 n.14 (1975)).

In contrast, "counsel's legal opinions and mental impressions that were not communicated do not acquire such factual characteristics and are, therefore, not within the scope of the waiver." *Id.* at 1304. Thus, such documents provide little assistance to the court in determining what the defendant knew and "any relative value is outweighed by the policies supporting the work product doctrine." *Id.* Therefore, the Court finds that the City does not have a compelling need for the documents in the files of Defendants' outside counsel that were not communicated to Defendants and that contain counsel's mental impressions and legal analysis.

The City cites several additional cases to support its argument that the mental impressions of Defendants' outside counsel, which were not communicated to Defendants, are at issue and discoverable. These cases, however, address insurer's claims files and opinions of claims adjusters, not the mental impressions and opinions of outside counsel contained in internal law firm files that have not been communicated to the insurer. *See Holmgren,* 976 F.2d 576-77 (claims adjuster's handwritten memoranda in the claims file regarding the insurer's opinion of the value of plaintiff's claims was discoverable in bad faith action); *Reavis v. Metropolitan Prop. and Liab. Ins. Co.,* 117 F.R.D. 160, 163-65 (S.D. Cal. 1987) (documents in insurer's claims file prepared by adjusters relevant to allegations of bad faith in claims handling ); *APL Corp. v. Aetna Cas. & Sur. Co.,* 91 F.R.D. 10, 12-13 (D. Md. 1980) (finding that insurer's claims file with documents relating to investigation by insurer's claims examiner, and insurer's claims investigation manual, were not prepared in anticipation of litigation and were not protected work product); *Brown v. Superior Court*, 670 P.2d 725, 734-36 (Ariz. 1983) (mental impressions of counsel, agents or other representatives recorded in the claims file are discoverable in bad faith action because the claims file is relevant to how the insurer handled claim.) Thus, the cases the

City cites do not support its request for the disclosure of documents and other materials in the files of outside counsel that were not communicated to Defendants.

In its Reply, in response to Defendants' argument that the City's motion cited only cases involving claims files and not documents from outside counsel's files that were not communicated to an insurer, the City cites two cases involving the discovery of outside counsel's files.[7]  (Doc. 67 at 4-5.)  These cases, however, are also distinguishable and do not support the City's argument that uncommunicated documents in outside counsel's files are "at issue" and discoverable in an insurance bad faith case alleging that the insurer was not reasonable in its claims handling decisions.

Instead, these cases involve antitrust and insurance rescission claims in which the opinions of outside counsel were at issue because they were witnesses or because they were responsible for claims investigation.  *See Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 929-31 (D.C. Cal. 1976) (in antitrust action plaintiff alleged that defendants filed a series of patent infringement cases in bad faith as part of conspiracy to restrain trade and eliminate competition, and defendants listed attorneys responsible for prosecuting prior patent infringement suits as witnesses to express opinions on merits of prior suits; therefore the opinions and mental impressions of counsel were at issue for plaintiff to challenge basis of the testimony of these witnesses)*; Bird v. Penn Cent. Co.*, 61 F.R.D. 43, 47 (E.D. Pa. 1973) (when defendants asserted plaintiffs were barred from bringing rescission action because they knew or should have known the grounds alleged as basis for rescission long before they filed suit, the knowledge, legal theories, and conclusions of counsel charged with the claim investigation were relevant to propriety of rescission action and discoverable).

---

[7]  Although the City raised arguments related to these cases for the first time in its reply, and Defendants have not had an opportunity to respond to these arguments, the Court will nonetheless address the City's arguments.  *See Lane v. Dept. of Interior*, 523 F.3d 1128, 1140 (9th Cir. 2008) (a district court can, in its discretion, decline to consider arguments raised for the first time in a reply brief); *see also United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (noting that courts generally decline to consider arguments raised for the first time in a reply brief).

1    Here, the mental impressions of Defendants' outside counsel that were not communicated

2    to Defendants are not relevant to the City's bad faith claim or Defendants' advice-of-counsel

3    defense.  Therefore, the City has not established a compelling need for the mental impressions

4    and legal opinions of Defendants' outside counsel as set forth in internal law firm documents that

5    were not communicated to Defendants and did not inform the coverage decision at issue in this

6    case.

7    **VI.    Rule 502 and Subject Matter Waiver**

8        Finally, the City argues that because Defendants have asserted the advice-of-counsel

9    defense, under Rule 502 they have waived the attorney-client privilege and work product

10   protection for all documents in their outside counsel's files related to coverage advice, including

11   documents that were not communicated to Defendants.  (Doc. 63 at 11-12.)  The City argues that

12   this broad waiver of privilege under Rule 502 results from Defendants' disclosure of coverage

13   opinion letters, e-mails, and law firm invoices because outside counsel's uncommunicated

14   mental impressions and analysis must be considered the "same subject matter" as their

15   communicated coverage advice.  The City also argues that this result is required because Rule

16   502 does not distinguish between communicated and uncommunicated mental impressions. (*Id.*

17   at 11-12; Doc. 67 at 10.)  As set forth below, the Court finds that the City's broad interpretation

18   of waiver is not supported by Rule 502 or the cases applying it.  Therefore, the Court concludes

19   that Defendants did not waive work product protection for documents contained in outside

20   counsel's files that were not communicated to Defendants.

21       Federal Rule of Evidence 502 provides that attorney-client privilege and work product

22   protection can be waived by disclosures made during a federal proceeding if: "(1) the waiver is

23   intentional; (2) the disclosed and undisclosed communications or information concern the same

24   subject matter; and (3) they ought in fairness be considered together."  Fed. R. Evid. 502.  This

25   subject matter waiver, however, "is reserved for those unusual situations in which fairness

26   requires a further disclosure of related, protected information, in order to prevent a selective and

27   misleading presentation of evidence to the disadvantage of the adversary."  Fed. R. Evid. 502

28

advisory committee's note. Furthermore, "the rule does not purport to supplant waiver doctrine generally." *Id.*

To support its argument that Defendants' assertion of the advice-of-counsel defense and the resulting waiver of the attorney-client privilege mandates a waiver of all documents related to their outside counsel's coverage analysis, the City cites *Lee v. Medical Protective Co.,* 858 F. Supp. 2d 803 (E.D. Ky. 2012), and it its reply cites *Arizona v. Frito-Lay, Inc.*, 273 F.R.D. 545 (D. Ariz. 2011). These cases do not support the broad, all-inclusive waiver of the work product doctrine that the City advocates here.

In *Lee,* the plaintiff sought documents from an insurance company's file. 858 F Supp. 2d at 804. The court held that when the insurer asserted the advice-of-counsel defense with respect to advice from appellate counsel, it could not assert that advice from trial counsel remained privileged. *Id.* at 807. Trial counsel remained in the case as co-counsel on the appeal. *Id.* at 805. The court based its decision on the waiver of attorney-client privilege under Kentucky law and Rule 502, finding that the insurer must disclose advice from appellate and trial counsel on the same subject. *Id*. at 807-08 ("the insurance company cannot disclose selective communications made by appellate counsel, while concealing communications it may have received from trial counsel on the same subject").

The court in *Lee* did not discuss any waiver of work product in counsel's file, but instead addressed the scope of the waiver of the attorney-client privilege based on the insurer's reliance on an advice-of-counsel defense. This decision does not support the City's argument that Defendants' waiver of the attorney-client privilege should be applied broadly to waive the work product doctrine for all documents in outside counsel's files related to the law firms' uncommunicated coverage analysis. Instead, the *Lee* decision is consistent with the Court's decision here that Defendants must produce all communications received from Berger Kahn and CKGH in 2011 related to coverage advice. *See supra* Parts IV(A) and (D).

In *Frito-Lay*, the court applied Rule 502 and held that the Civil Rights Division of the Arizona Attorney General's Office (ACRD) waived any attorney-client privilege or work product protection over any document prepared by its "employee attorneys" who investigated

and prepared its administrative reasonable cause determination.[8]  273 F.R.d. at 555-58.  The *Frito-Lay* decision involved an employment discrimination suit in which the ACRD "had its attorney sign the reasonable cause determination in her capacity as a lawyer, therefore, the ACRD created a public document containing its attorney's legal conclusions." *Id.* at 555.  The court explained that because the ACRD did not simply state its conclusion that reasonable cause existed, but instead "provide[d] that determination under the signature of one of its lawyers, who sign[ed] the document as 'Chief Counsel,'" the ACRD waived all attorney-client privilege and work product privilege in the investigation of the plaintiff's complaint and the preparation of the reasonable cause decision. *Id.*

Because the reasonable cause determination was admissible at trial, and its probative value was arguably enhanced because it contained the conclusions of the ACRD attorneys, the court concluded that the ACRD could not "bolster its reasonable cause determination by having it issued by an attorney, and at the same time claim the attorney-client privilege in how it arrived at the conclusion." *Id.* at 557.  Therefore, "in fairness, the communications the agency received from its attorneys concerning the reasonable cause determination ought to be considered in conjunction with the reasonable cause determination." *Id.*

The communications and  information at issue were from ACRD attorneys involved in "reaching the ACRD's determination" in this matter "and/or in drafting" the reasonable cause determination and therefore were on the "same subject" as that determination. *Id.* at 556.  The privileged information at issue was from attorneys who were employees of the ACRD who could be described as "in-house" counsel.  Thus, the ACRD had full access to all of the information and analysis of these employee-attorneys.  *Frito-Lay* did not involve or discuss any work product contained in the files of outside counsel that was not communicated to the ACRD.  Thus, the

---

[8]  Under Arizona law, the ACRD is charged with investigating charges of employment discrimination.  If the ACRD determines that there is reasonable cause to believe the charge is true, it enters an order containing its administrative reasonable cause determination.  *See Frito-Lay*, 273 F.R.D. at 551 (citing Ariz. Rev. Stat. § 41-1481(B)).

1   *Frito-Lay* decision does not support the City's argument of a broad waiver of work product under

2   Rule 502.

3       The City argues that because Defendants disclosed Henrichsen's October 24, 2011

4   opinion letter (Doc. 63, Ex. 2), the August 30, 2011 e-mail from Campbell to his supervisor

5   summarizing advice received from LaBelle (*Id*., Ex. 3), invoices from the Berger Kahn and

6   CKGH firms (*Id*., Ex. 4), and an August 29, 2011 e-mail from LaBelle to Zevnik (Doc. 67,

7   Ex. 1), Defendants must disclose all other documents in the Berger Kahn and CKGH files related

8   to their coverage analysis.  (Doc. 63 at 12.)  The City interprets "same subject matter" too

9   broadly.  Here, the "same subject matter" for waiver of the attorney-client privilege or the work

10  product doctrine is the coverage advice *provided* to Defendants.  Thus, the Court finds that

11  uncommunicated analysis in outside counsel's files is not the same subject matter for purposes

12  of waiver under Rule 502.  Therefore, Defendants' disclosure of Henrichsen's October 24, 2011

13  opinion letter, and Campbell's August 30, 2011 e-mail summarizing LaBelle's advice, does not

14  result in a waiver of work product protection for all documents in the law firms files related to

15  the coverage analysis.

16      Defendants' disclosure of counsel's invoices does not give rise to a waiver of the work

17  product protection as to the communications and investigation referenced on the invoices.  The

18  invoices do not include enough information to disclose any mental impressions protected by the

19  work product doctrine.  Rather, the invoices disclose the general subject matter of billing entries.

20  Similarly, Defendants did not waive work product protection by disclosing an internal e-mail

21  between attorneys LaBelle and Zevnik dated August 29, 2011.  In this e-mail, LaBelle forwarded

22  an e-mail from Campbell transmitting the City's August 26, 2011 letter to Chartis.  The LaBelle

23  e-mail states in its entirety, "Please review attached and let's discuss — Lance."  (Doc. 67,

24  Ex. 1.)  This e-mail did not include the opinions or mental impression of counsel or anything else

25  that could be construed as work product and did waive work product protection with regard to

26  additional documents in the Berger Kahn file.  *See Sara Lee Corp. v. Kraft Foods, Inc.,* 273

27  F.R.D. 416, 421 (N.D. Ill. 2011) ("admitting communications occurred does not qualify as

28

'disclosing' the underlying communications.  By [that] logic, parties would commit a waiver every time they made an entry in a privilege log.").

Finally, the City also argues that Rule 502 does not distinguish between communicated and uncommunicated work product, but instead requires the disclosure of "all documents which fairly relate to the investigation that is the subject matter of the waiver," which it defines as all "documents in counsel's possession that related to counsel's investigation of coverage." (Doc. 67 at 9.)  Because the City's broad interpretation of waiver under Rule 502 conflicts with the Federal Circuit's decision in *EchoStar*,[9] the City argues that *EchoStar* must be disregarded because it was decided before Rule 502 was adopted. (Doc. 67 at 9.)  The City's argument fails because the advisory committee notes explicitly reject the suggestion that the rule would invalidate the existing body of law addressing waiver. *See* Fed. R. Evid. 502 advisory committee note ( "the rule does not purport to supplant applicable waiver doctrine generally.").  Therefore, the Court concludes that Rule 502 does not supplant *EchoStar* and the case law addressing the waiver of the attorney-client privilege when a party asserts an advice-of-counsel defense.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Compel (Doc. 63) is **GRANTED** in part, and **DENIED,** in part.

**IT IS FURTHER ORDERED** that Defendants must produce the ten items on the privilege log that are described as communications between Campbell and LaBelle in August 2011 (Bates-stamped CORR 88-94, 96-103, and 108-127), and the eight items on the privilege log that are from the CKGH file and are described as copies of e-mails between Campbell and LaBelle, or copies of e-mails describing conversations between Campbell and LaBelle, or are notes describing that advice, all of which are dated in August 2011. (Bates-stamped CKGH 589-590, 593-594, 607-608, 624, 627-628, 652-656, 701-711, and 721.)

**IT IS FURTHER ORDERED** that Defendants are not required to produce the July 5, 2012 coverage opinion identified on the privilege log (Bates-stamped COVOPS 36-47), but if any

---

[9] *See* discussion *supra* Part V(C) at 24-25.

of the other five coverage opinions identified on the privilege log (Bates-stamped COVOPS 1-35 and 48-85) provide advice that is relevant to this matter, as set forth in this Order, Defendants must produce those opinions. Defendants may significantly redact these opinions to remove identifying information, facts that are not necessary for an understanding of the legal discussion, or any coverage advice that is not relevant in this case.

**IT IS FURTHER ORDERED** that Defendants are not required to produce the twenty-three items on the privilege log that are described as internal CKGH e-mails, e-mails to Fulton at Chartis, and e-mails to Attorney Terhar regarding the pending bad faith lawsuit. (Bates-stamped CKGH 175, 199-204, 208-210, 213, 235, 268, 354, 371-373, 401-402, 408, 414-415, 428-430, 467, and 477-480.)

**IT IS FURTHER ORDERED** that Defendants are not required to produce the documents from the Berger Kahn and CKGH files that were not provided to Defendants, specifically the five items on the privilege log described as internal Berger Kahn e-mails regarding status, internal directives, and attorney file notes (Bates-stamped CORR 95, 104-107, and 152-161), and the forty-one items on the privilege log described as internal CKGH e-mails or file notes regarding the status of the law firm's investigation and draft opinion letters for Chartis (Bates-stamped CKGH 189-190, 198, 206-207, 220-221, 223, 237-263, 266-267, 283-319, 337, 343-345, 353, 358-363, 384, 405-407, 449, 452-454, 465-466, 481-482, 485-487, 498-502, 506-510, and 657-659.)

DATED this 29th day of April, 2013.

_____
Bridget S. Bade
United States Magistrate Judge

- 32 -